IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-00162-01-CR-W-NKL |
| | ) | |
| MATTHEW HARKER, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Counsel for defendant Harker has filed a Motion for Disqualification Pursuant to 28 U.S.C. § 455 (doc #31) seeking to disqualify the judges of the United States District Court for the Western District of Missouri from all further proceedings in this case. For the following reasons, it is recommended that this motion be denied.

I. BACKGROUND

On May 1, 2008, defendant Harker was charged in a Criminal Complaint with threatening to murder Judge Dean Whipple and Judge Ortrie Smith, United States District Judges for the Western District of Missouri. The affidavit in support of the complaint indicated that on May 1, 2008, a message was left on the voicemail for Judge Whipple's chambers by a person identifying himself as Matthew Harker. The affidavit set forth the following:

> 2. ... Matthew Harker has a documented history with the United States Marshals Service of making threats against the federal judiciary dating back to 2005. The caller talked of various violations against the Constitution that have been committed by United States District Judge Dean Whipple and United States District Judge Ortrie Smith. The caller concluded the call by stating the following, "If I see Mr. Whipple or Mr. Smith, I will kill Mr. Whipple or Mr. Smith. They will correct themselves, they will carry through on the case or they will not live."

3. Matthew Harker had three cases dismissed in the United States District Court for the Western District of Missouri: *Harker v. United States Government*, No. 03-CV-00634-ODS; *Harker v. United States Government*, No. 03-fp-00518-DW; and *Harker v. Blakey*, 05-fp-06038-ODS.

4. The caller ID of the voicemail showed the telephone call was received from (816) 858-7118. That telephone number is serviced by Exop of Missouri, Inc. Exop of Missouri, Inc. advised the current subscriber of (816) 858-7118 is Matthew Harker, 918 Fontana, Apartment 7, Platte City, Missouri.

5. Matthew Harker was arrested on this date as he exited his apartment building. Harker made the following unsolicited post-arrest statement: "I have asked for someone to come talk to me, I have asked to talk to someone at the courthouse, I make one phone call and you think that gives you the right to arrest me."

(doc #1-1 at 2)

On May 8, 2008, the Government filed a Motion for Psychiatric Examination. Defendant Harker was examined at the Medical Center for Federal Prisoners in Lexington, Kentucky, by Dr. Karen Milliner, a forensic psychologist. Dr. Milliner found defendant not competent at the present time, but found that there was a substantial probability that he could attain competency in the foreseeable future if he were committed for treatment.

On June 24, 2008, a one-count Indictment was filed against defendant Harker alleging a threat against a United States judge in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4).

A competency hearing was held on August 6, 2008, before Magistrate Judge Robert E. Larsen. Magistrate Judge Larsen issued a Report and Recommendation recommending that the District Court enter an order finding defendant Harker incompetent to stand trial and further recommending that Harker be committed to the custody of the Attorney General for hospitalization and treatment pursuant to 18 U.S.C. § 4241(d). On October 7, 2008, District Judge Nanette Laughrey issued an Order finding defendant Harker incompetent to stand trial and committed him

2

to the custody of the Attorney General to determine whether there is a substantial probability that in the foreseeable future Harker will attain the capacity to permit the trial to proceed.

## II. LEGAL DISCUSSION

Defense counsel seeks to disqualify the judges of the United States District Court for the Western District of Missouri from all further proceedings in this case. As grounds for the motion, defendant sets forth the following:

> Disqualification pursuant to § 455 does not require the showing of actual bias, but turns on the question of whether or not the Court's impartiality might reasonably be questioned by the average person on the street who knows the relevant facts. ...
>
> It is respectfully suggested that the Court should review the matter and make a determination concerning whether or not based upon the subjects of the Defendant's alleged threats a question might raise the Court's appearance of impartiality to the average person.
>
> The record in this case shows that the U.S. Attorneys Office for the Western District of Missouri has disqualified the Office from further proceeding in this case.

(Motion for Disqualification Pursuant to 28 U.S.C. § 455 (doc #31) at 2)

Defendant relies on 28 U.S.C. § 455(a) to support his argument that the Court should recuse from all further proceedings. This section provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The general language of 28 U.S.C. § 455(a) was designed to promote public confidence in the integrity of the judicial process by adopting an objective test for deciding whether a judge should recuse or be disqualified. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 858 n.7 (1988). Under this standard, "the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993). The

3

test for disqualification in the Eighth Circuit is as follows:

> ... whether, from the perspective of "the average person on the street," a reasonable man knowing all of the circumstances "would harbor doubts about the judge's impartiality." United States v. Poludniak, 657 F.2d 948, 954 (8th Cir. 1981)(citation omitted).

Tyler v. Purkett, 413 F.3d 696, 704 (8th Cir. 2005). However, a judge is also under an obligation not to recuse where there is no reason to do so. See United States v. Greenspan, 26 F.3d 1001, 1005 (10th Cir. 1994). Cases under section 455(a) are extremely fact driven. See Nichols v. Alley, 71 F.3d 347, 352 (10th Cir. 1995). Thus, in evaluating the arguments of defendant, the Court must carefully examine the facts of the cases relied upon and compare them to the issues before this Court.

Defendant contends that a similar issue confronted the court in In re Nettles, 394 F.3d 1001 (7th Cir. 2005). In Nettles, defendant Nettles, after being sentenced to a two-year term of imprisonment by a district judge of the United States District Court for the Northern District of Illinois, told a fellow prisoner he wanted to destroy the Dirksen Courthouse which houses the United States District Court for the Northern District of Illinois as well as the Seventh Circuit Court of Appeals. Id. at 1002. Upon release from prison, Nettles contacted an individual, who was an undercover FBI agent, and arranged for the purchase of ammonium nitrate. Id. at 1002-03. Nettles then arranged to resell the ammonium nitrate to a purported terrorist, another undercover agent, who seemed willing and able to use the product to destroy the building. Id. The Seventh Circuit Court of Appeals cited with approval cases from other jurisdictions that have held that a threat to a judge that appears to be genuine and not merely motivated by a desire to recuse the judge requires disqualification. Id. at 1002. The Seventh Circuit concluded that since all of the district judges for the Northern District of Illinois, as well as the judges of the Seventh Circuit, would have been

4

test for disqualification in the Eighth Circuit is as follows:

> ... whether, from the perspective of "the average person on the street," a reasonable man knowing all of the circumstances "would harbor doubts about the judge's impartiality." United States v. Poludniak, 657 F.2d 948, 954 (8th Cir. 1981)(citation omitted).

Tyler v. Purkett, 413 F.3d 696, 704 (8th Cir. 2005). However, a judge is also under an obligation not to recuse where there is no reason to do so. See United States v. Greenspan, 26 F.3d 1001, 1005 (10th Cir. 1994). Cases under section 455(a) are extremely fact driven. See Nichols v. Alley, 71 F.3d 347, 352 (10th Cir. 1995). Thus, in evaluating the arguments of defendant, the Court must carefully examine the facts of the cases relied upon and compare them to the issues before this Court.

Defendant contends that a similar issue confronted the court in In re Nettles, 394 F.3d 1001 (7th Cir. 2005). In Nettles, defendant Nettles, after being sentenced to a two-year term of imprisonment by a district judge of the United States District Court for the Northern District of Illinois, told a fellow prisoner he wanted to destroy the Dirksen Courthouse which houses the United States District Court for the Northern District of Illinois as well as the Seventh Circuit Court of Appeals. Id. at 1002. Upon release from prison, Nettles contacted an individual, who was an undercover FBI agent, and arranged for the purchase of ammonium nitrate. Id. at 1002-03. Nettles then arranged to resell the ammonium nitrate to a purported terrorist, another undercover agent, who seemed willing and able to use the product to destroy the building. Id. The Seventh Circuit Court of Appeals cited with approval cases from other jurisdictions that have held that a threat to a judge that appears to be genuine and not merely motivated by a desire to recuse the judge requires disqualification. Id. at 1002. The Seventh Circuit concluded that since all of the district judges for the Northern District of Illinois, as well as the judges of the Seventh Circuit, would have been

4

impacted by an attack on the courthouse, all of the district and circuit judges should be recused:

> A reasonable observer would think that a judge who works in the Dirksen building would want Nettles to be convicted and given a long sentence, rather than to be set free, either forthwith or sooner rather than later, to make another attempt to destroy the courthouse or its occupants.

Id. at 1003.

Unlike the factual situation in Nettles, the threats in this case were not directed to nor did they involve the judges assigned to conduct pretrial issues and try the case. The circumstances of this case are more closely aligned with those present in Clemens v. United States District Court for the Central District of California, 428 F.3d 1175 (9th Cir. 2005). In that case, Clemens was charged in a four-count indictment with making threats with intent to extort, assault, murder or inflict harm upon three federal district court judges from the Central District of California. Id. at 1177. The threats were made in connection with *pro se* suits Clemens had filed in the Central District. Id. Defendant sought to disqualify all of the judges from the Central District of California from presiding over his criminal trial. Id. The Ninth Circuit, in concluding that recusal of all of the judges of the district was not required, pointed out that there were no allegations that the judge assigned to the case was an intended victim of the charged offense. Id. at 1179. Nor could a reasonable person draw an inference of a threat against the entire bench, since the charge involved only three judges. Id. Further, the court rejected any attempt to disqualify the trial judge based on the defendant's speculation about the personal relationships among the judges of the Central District. Id. at 1180. The court pointed out that it had previously rejected a defendant's attempt to disqualify a judge based on the judge's relationship with a victim. Id. This Court concludes that the reasoning of the Ninth Circuit in Clemens is equally applicable in the present case.

In evaluating the scope of the alleged conduct at issue, defendant Harker did not undertake,

5

directly or indirectly, any conduct that would have affected all of the judges of the Court. Judge Whipple and Judge Smith were apparently threatened because they had previously dismissed lawsuits filed by Harker.

Given the background and circumstances of this case, the undersigned concludes the average person would not harbor a doubt about the impartiality of the two judges assigned to hear the case. No telephone threats were made against either the undersigned or Judge Laughrey and the impartiality of the undersigned and Judge Laughrey is questioned merely because we serve on the same court as the judges against whom the alleged telephone threats were made. As set forth above, these circumstances do not warrant recusal. Having concluded that neither the undersigned nor Judge Laughrey need recuse, that portion of the motion seeking the recusal of all of the judges in the district is moot.

### III.  CONCLUSION

Given the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Harker's Motion for Disqualification Pursuant to 28 U.S.C. § 455 (doc #31).

Counsel are reminded that they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

6

                */s/ Sarah W. Hays*
                SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE